# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 12-112** |
| | : | |
| **PATRICIA MCGILL** | : | |
| | : | |

# ORDER

AND NOW, this _____ day of _____, 2016, it is HEREBY

ORDERED that judgment of acquittal as to Patricia McGill be entered on all Counts of

conviction, Counts 3, 4, 9, 14.

BY THE COURT:

_____
J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 12-112 |
| | : | |
| PATRICIA MCGILL | : | |
| | : | |

**DEFENDANT PATRICIA MCGILL'S RENEWED MOTION
FOR JUDGMENT OF ACQUITTAL**

Defendant Patricia McGill hereby renews her motions for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, made at the conclusion of the government's case and at the conclusion of all the proof, which the Court reserved ruling upon. This brief addresses specific and additional points in support of that motion in the sections which follow.

A motion for a judgment of acquittal must be granted if, after viewing all of the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the required elements of each offense were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Mrs. McGill's conviction can be upheld only if the government's evidence would permit a reasonable jury to "find the essential elements of the crime[s] beyond a reasonable doubt." United States v. Starnes, 583 F.3d 196, 206 (3d Cir. 2009). In determining whether this standard is met, the evidence must be viewed in the light most favorable to the government, mindful that it is the jury's province to make credibility determinations and to assign weight to the evidence. United States v. Boria, 592 F.3d 476, 480 (3d Cir. 2010).

Here, on each of the four counts of conviction, any rational juror must have had a reasonable doubt about the guilt of Patricia McGill because all of the required elements of those offenses were not proven. The government failed to call any witness to testify to a "health care

2

benefit program" affecting interstate commerce, both essential elements of a health care fraud scheme; there was insufficient evidence of the required mens rea for either health care fraud or aiding and abetting because the government's chief witness basically exonerated her; there was no proof that Mrs. McGill knew about the health care fraud statute or regulation she is accused of knowingly violating; the regulation under which she was charged is void for vagueness; there was no proof that Mrs. McGill did any billing or knew what was billed or received by the unindicted entity Home Care Hospice ("HCH"); parts of the counts for which she was convicted are outside the five year statute of limitations; and her conviction on Count 4 must be vacated because it was a file altered by a government agent during the course of his cooperation.

## I. BACKGROUND

On March 21, 2012, Mrs. McGill and others were indicted, Mrs. McGill herself on 14 counts as follows:  conspiracy to commit an offense against the United States (health care fraud) (1 count 18 U.S.C. § 1349), and health care fraud and aiding and abetting (13 counts 18 U.S.C. §§ 1347 and 2).  The indictment alleged that from January 2003 to December 2008, Mrs. McGill and others unnamed in the indictment conspired to defraud Medicare and to obtain money from that program.  In Counts 2 through 14 Mrs. McGill was charged with knowingly and willfully executing a scheme to defraud Medicare, and aiding and abetting that conduct, by submitting false claims for patients and receiving payments for those claims.

The defense showed that Mrs. McGill did not write false reports, did not do any billing and received no benefit from any monies received (there was a failure of proof on the receipt of funds and it is unknown what refund was made to Medicare post the 2007 discharge of patients when Alex Pugman realized HCH would be back-billed for 2006 and 2007).  The patients were all cared for and, if anything, received more care than they were entitled to under

the hospice program according to the government's proofs. In other words, testimony by government witnesses showed that because of the Medicare cap on an individual patient, that Home Care Hospice ("HCH") provided free care for hundreds of patients who were on hospice care in excess of 6 months. It was clear from witness testimony that the regulations were so complicated that they were not understood. The government expert, Mrs. Stone refused to address that Medicare has since been forced by the federal courts to revise their method of billing for hospice after numerous lawsuits, in which Medicare failed to prevail.[1]

After a multi-week trial, the jury acquitted Mrs. McGill of Count 1, conspiracy to commit health care fraud, and 9 substantive counts of health care fraud, Counts 2, 5-8, 10-13. Acquittal on the conspiracy count inferred there was insufficient evidence that she conspired to defraud, negating the required element of the necessary scheme to defraud under 18 U.S.C. §1347. Nevertheless the jury convicted her on Counts 3, 4, 9 and 14 for health care fraud.

## II.     ELEMENTS OF THE OFFENSES AND ABSENCE OF PROOF

### A.     Health Care Fraud/ Aiding and Abetting

Mrs. McGill was convicted on the following four counts of health care fraud or aiding and abetting health care fraud[2]:

Count 3 is for Patient F.G. (Frances Goldberg) with claim dates[3] of 6/16/06-8/11/08, Government's Exhibit 21.

Count 4 is for Patient M.Q (Mary Quinto) with claim dates of 3/21/06-1/22/07; 5/23/07-11/21/07; 6/19/08; and 8/7/08-9/8/08, Government's Exhibit 22.

---

[1] Ironically, Mr. Pugman's company may be due a refund from Medicare if he submitted under the revised billing formula forced on Medicare by the courts.
[2] It is unknown whether the conviction was for health care fraud or aiding and abetting.
[3] Note that the service dates in the Indictment are different from the claim dates.

4

Count 9 is for Patient J.G. (Josephine Greenberg) with claim dates of 3/19/07-6/5/07, Government's Exhibit 27.

Count 14 is for Patient J.H. (James Hamblin) with claim dates of 1/4/07-10/17/07, Government's Exhibit 32.

The elements of health care fraud, 18 U.S.C. § 1347, that the government must prove are: "(1) that the defendant knowingly and willfully devised or participated in a scheme to defraud Medicare to obtain by false or fraudulent pretenses money or property from Medicare in connection with the delivery of or payment for health care; (2) that the defendant had intent to defraud; (3) that Medicare is a public plan or contract affecting commerce under which medical benefits were provided to an individual. Materiality is an essential element of the crime of health care fraud.

The standard for accomplice liability is set out in 18 U.S.C. § 2: (a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as a principal. Four elements must be proven by the government: 1) that Pugman or others committed the charged office by fulfilling the required elements of health care fraud as set forth above; 2) that Mrs. McGill knew the offenses charged were being committed; 3) that Mrs. McGill knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating or encouraging Alex Pugman and others in committing health care fraud; and 4) that Mrs. McGill's acts in some way did aid, assist, facilitate or encourage Alex Pugman to commit the offense of health care fraud. Mere presence or being a knowing spectator is not enough, the

proof must show that it was Mrs. McGill's intent and purpose to help Alex Pugman succeed. The government must show affirmative participation.

In order to aid and abet, one must do more than merely be present at the scene of the crime and have knowledge of its commission. The Supreme Court set out the standard for the offense in Nye & Nissen v. United States, 336 U.S. 613, 619 (1949), when it quoted Judge Learned Hand's statement from United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938): In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed'. This requires proof of something more than mere association with a criminal venture. United States v. Morrow, 923 F.2d 427, 436 (6th Cir. 1991). The government must prove "some active participation or encouragement, or some affirmative act by (the defendant) designed to further the (crime)." Id

### III. ARGUMENT

#### A. The Government Failed to Present Evidence of a Health Care Benefit Program That Affects Interstate Commerce, both Elements of Health Care Fraud

A health care benefit program is defined in 18 U.S.C. § 24 for purposes of the federal health care offenses as follows: A health care benefit program is a [public or private] [plan or contract], affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract. A health care program affects commerce if the health care program had any impact on the movement of any money, goods, services, or persons from one state to another. "Affecting commerce" is an element of proof in health care fraud. Courts have interpreted "affecting commerce" under § 24

6

as requiring an interstate commerce effect. United States v. Whited, 311 F.3d 259 (3d Cir. 2002). The health care fraud counts fail because no government witness testified about any interstate commerce effect.

From the testimony given by Jean Stone, the government's expert, the government's trial goal was to show the operation of Medicare. However, the government did not prove that Medicare was a health care benefit program affecting commerce as defined in the statute because there was no adequate testimony about commerce. There was testimony about a state office in Harrisburg which audited HCH files on behalf of Medicare, but nothing specifically interstate. This is a failure of proof of critical elements of the offense.

>B.   The Government's Chief Witness Against Patricia McGill Negated the Element of Intent to Commit Health Care Fraud or to Aid and Abet Health Care Fraud

The Indictment in this case alleged a conspiracy and a scheme to defraud Medicare revolving around altered patient files. The government conceded during its closing argument that the case revolved around intent. The architect of the scheme, Alex Pugman, one of the owners of HCH who earlier pleaded guilty to conspiracy and has since extensively and effectively cooperated with the government against other members of the conspiracy, testified for the government in this case. Mr. Pugman, the government's principal witness, stated that Mrs. McGill was *not* part of the conspiracy and that the government was well aware of that because of Title III tapes in Russian which confirmed that the conspirators kept her out of it for fear she would report them.[4]   Upon cross examination Mr. Pugman also admitted that not long after the FBI search of HCH in early March 2008, he went to her office and acknowledged he had lied to her about whether patients were appropriate for hospice services.

---

[4] This is a prime example of the government not specifically disclosing Brady/Giglio material within the hundreds of hours of audiotape, much of it in Russian.

7

No witness testified that Mrs. McGill intended to defraud anyone by any document in any count of conviction, and no witness testified that those documents were used in any way in billing Medicare.[5] As this Court instructed the jury, proof that the defendant may have known about the crime, even if she was there when it was committed, is not enough to find Mrs. McGill guilty. What the government must prove for aiding and abetting is that the defendant did something to help the crime with the intent that the crime be committed. This the government did not do. The chief architect of the health care fraud scheme, Alex Pugman, testified clearly *on direct examination* that Mrs. McGill was not a part of the scheme. He actively took steps to keep that knowledge from her. On cross examination he admitted that about three weeks after the government exercised its search warrant of HCH offices in early October 2008, he went into Mrs. McGill's office and confessed to her that he had lied to her about patients' appropriateness and other matters. With this direct evidence from the government's chief witness against her, the conviction on Counts 2, 3, 9 and 14, all of which have claim dates prior to his confession to her, cannot be upheld.

> C. **The Prosecution is Void for Vagueness and for Failure to Elicit Proof of Knowledge of the Law Violated as Required for Conviction of Health Care Fraud Prior to Amendment in 2010.**

The government's attempt to attach criminal liability for health care fraud to violations of Medicare hospice regulations that are confusing and complex and that the government refused to delineate, or erroneously delineated, to the jury, violates the most basic

---

[5] In fact the government never explained how patients were billed, by the day, the week, the service or so forth. One of the government investigators trying to explain how he arrived at his numbers admitted the government simply told him the dates to add up and he admitted that bills were done in two week blocks, but that services were not necessarily received every day, and that the lump sum billings included hard costs such as incontinent supplies and medications.

constitutional requirement.[6] The regulations upon which the prosecution was based do not provide fair notice of prohibited conduct, that is, a strict six-month hospice limit, in fact it provides otherwise and even allows for discharge and readmittance, and the government witnesses conceded that point at trial. Yet, the government resisted the jury instruction that would have required the jury to prove that Mrs. McGill knew of that regulation and intended to violate it, all as charged in the indictment at paragraphs 7, 8, 9.

In this case the primary qualifier for hospice care is a doctor's certification that a patient has a terminal illness which, if it runs its normal course, the patient will die within 6 months. It is indisputable that every file had such a certification. There is nothing in the regulations that requires "policing" of a doctor's medical judgment. In fact, on cross examination the government's expert, Jean Stone, among others, testified that a hospice determination involves clinical judgment, which is a province of doctors, not nurses or aides. The testimony was that a nurse could make a recommendation, but that the ultimate decision maker was the patient's doctor. If the government's theory is that nurses are the final arbiter, that effectively lets medical doctors off the hook of any responsibility because it is up to the nurse to police. If this is the government's position, then medical doctors are protected from criminal liability by pointing at their subordinates.

1. Due Process and "Fair Notice.

Vague or confusing regulations are a deprivation of due process. Due process considerations — having fair notice before being subjected to sanctions — prevent imposition of

---

[6] In Rollins Environmental Services (NJ), Inc. v. EPA, 937 F.2d 649 (D.C. Cir. 1991), a civil case, the U.S. Court of Appeals for the District of Columbia Circuit held that a company cannot be penalized for violating ambiguous, confusing environmental regulations. The court also maintained that an agency interpretation of ambiguous regulations was not entitled to deference in an enforcement case, where giving such deference would validate application of a regulation that does not, on its face, give clear warning of the conduct prohibited.
The Rollins decision is significant to this case because it isolates regulatory confusion as a mitigating criteria for *civil* penalties. Courts protect companies from civil penalties for ambiguous rules. They should do no less to protect individuals from criminal liability for ambiguous regulatory rules.

liability or penalties if the regulation was not clear enough so that its prohibitions could be understood.  The Supreme Court long ago held that "[t]he underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harris, 347 U.S. 612, 617 (1954).  If a statute or regulation provides insufficient warning of its prohibitions, no liability attaches. The Harris Court held: "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute."  Id.  See also United States v. National Dairy Prods. Corp., 372 U.S. 29, 32-33 (1963) ("Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.")

In Cheek v. United States, 498 U.S. 192 (1991), the Court held that a defendant could not be convicted of a "willful"[7] violation of IRS law if there was a subjective good faith confusion with the complex code, even if the belief was irrational. The Supreme Court reaffirmed the necessity of proving mens rea for "knowing" violations in subsequent cases involving regulatory requirements. For example, in Staples v. United States, 511 U.S. 600 (1994), the Court held that prosecution under the National Firearms Act, which made it unlawful to possess a machine gun not properly registered with the government, required the government to prove the defendant knew the specific features of his weapon came within the definition of a regulated firearm under the law. Because violations of the firearm law subjected a person to lengthy prison terms, the Court concluded that Congress did not intend to eliminate the mens rea requirement.

---

[7] Of note is that a recent Supreme Court case, Rosemond v. United States, 134 S. Ct. 1240 (2014), leaves explicitly undecided as to whether knowledge can be proved by showing that the crime was the "natural and probable consequence" of a defendant's acts, a jury instruction to which the defendant objected

As Mrs. McGill has continuously argued, the health care fraud law 18 U.S.C. § 1347 was amended in 2010, long after the events set forth in the indictment, to reduce the intent requirement of the statute by adding paragraph (b) which lessens the government's burden of proof by eliminating the requirement of knowledge of the regulation.  The failure to elicit from witnesses evidence of Mrs. McGill's knowledge of the regulation and her intent to violate it is an ex post facto and due process violation.  The Constitution prohibits both Congress and the states from enacting ex post facto laws.[8]  More precisely it prohibits:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. *Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender*.

Stogner v. California, 539 U.S. 607, 612 (2003), quoting, Calder v. Bull, 3 Dall. (3 U.S.) 386, 390 (1798) (seriatim opinion of Chase, J.)(emphasis added)

Changes in evidentiary rules that allow conviction on less evidence than was required at the time the crime was committed run afoul of the *ex post facto* clause. This principle was applied most recently in the Supreme Court's invalidation of retroactive application of a Texas law that eliminated the requirement that the testimony of a sexual assault victim age 14 or older must be corroborated by two other witnesses, and allowed conviction on the victim's testimony alone.  See Carmell v. Texas, 529 U.S. 513 (2000)  Similarly, here, in 2010 Congress added a paragraph to 18 U.S.C. § 1347 setting forth that it was unnecessary to prove knowledge and intent to violate a health care law.  This, of course, is a significant defense for Mrs. McGill eliminated by the change in the law.

---

[8] No Bill of Attainder or ex post facto Law shall be passed.... No State shall ... pass any Bill of Attainder, [or] ex post facto Law.... U.S. Const. Art. I, §§9, 10.

The 2010 change reduced the level of intent required to prove a violation of health care fraud under 18 U.S.C. § 1347, and thus made it easier for the government to prove a violation. Congress amended the intent requirement and provided that ''a person need not have actual knowledge of [18 U.S.C. § 1347] or specific intent to commit a violation of [18 U.S.C. § 1347].'' Pub. L. No. 111-148, § 10606(b), codified at 18 U.S.C. § 1347(a)-(b).

Having failed to elicit evidence of Mrs. McGill's knowledge of the law or Medicare regulations she was accused of violating,[9] the government does not get a second bite at the apple. The conviction on the four health care fraud counts must be reversed and a judgment of acquittal entered.

### D. Any Billing Was Performed by a Third Party (HCH) That Patricia McGill Did Not Control, Was Not a Principal of, Nor Did She Have Knowledge of What Entity Was Billed or For What Services for Any Patient

Mrs. McGill was charged in Counts 2-14 for Health Care Fraud by submitting fraudulent insurance claims to Medicare. There was no proof at trial that she submitted any bills, or assisted in their submission. In United States v. Kline, 922 F.2d 610 (10th Cir. 1990), a False Claims Act case, the court held that it was improper to instruct the jury on the government's aiding and abetting theory under 18 U.S.C. § 2, and reversed the defendant's convictions. The defendant was charged with violating the False Claims Act by making and submitting fraudulent claims, but the government was unable to prove that it was the defendant who prepared and submitted the claims. To cure this evidentiary defect, the prosecution tendered and the court gave an instruction that the defendant could be convicted for aiding another employee in submitting the false claims. However, that employee testified that she probably made a mistake in submitting the claims, which she said was easy to do given the complex billing codes.

---

[9] The Indictment charges criminal violation of those regulations, see paragraphs 7-9.

12

The aiding and abetting statute has two parts. The first requires the existence of a principal who was aided by the defendant; in Kline, the court said, there is no evidence of a principal. The second part of 18 U.S.C. 2 punishes a defendant who causes a criminal act to be done by another; however, the indictment only charged that the defendant "made and presented" the false claims, and the Court held that the government was, therefore, not entitled to the instruction.

Similarly, in this case, the government charged Mrs. McGill with attempting to defraud Medicare and obtain money by means of false pretenses in connection with the delivery of health care, and aided and abetted that conduct, by submitting and causing to be submitted fraudulent health care insurance claims in the amounts set forth in the counts 2-14. Mrs. McGill did not falsify claims, she did not bill claims, she did not assist Alex Pugman with billing for claims or cause him to bill claims. Thus, like Kline, the Indictment against Mrs. McGill is clear, it alleges she submitted and caused to be submitted fraudulent health care insurance claims. While the jury instruction in this case is the standard Third Circuit formulation, Kline is instructive in that the government is held to the charges brought. Because there is no evidence that Mrs. McGill herself submitted any claims, and by his own admission she was kept out of the loop with what Mr. Pugman submitted, then judgment for acquittal must be granted on Counts 3, 4, 9 and 14.[10]

### E.     All Four of the Counts of Conviction Contain Charges Outside the Statute of Limitations

The statute of limitations is a complete defense to a criminal charge, and it must be raised prior to trial, as it was in this case. The statute of limitations for 18 U.S.C. § 1347 is five years. The federal statute 18 U.S.C. 3282 stipulates that a defendant cannot be prosecuted,

---

[10] By way of illustration, Count 14, Mr. Hamblin, also had Aetna insurance. There is no proof of what, if anything, was billed to Medicare.

13

tried or punished for any type of non-capital offense, unless the indictment is processed within five years of the date that the offense was committed. This applies to crimes of health care fraud. Mrs. McGill's indictment was filed on March 21, 2012. Thus, any alleged evidence including activities and billings, prior to March 21, 2007, for the 4 counts of conviction must be stricken or, at a minimum, amended to begin activities or billings no earlier than March 21, 2007. That amendment will significantly affect the monetary amounts at issue.

### F. A Government Agent Deliberately Falsified Files While Operating As a Government Agent and Alleged Co-conspirator

One of the counts of conviction, Counts 4 (patient Mary Quinto (Rich Barber's great aunt) was a patient of a government agent, Richard Barber. Mr. Barber "doctored up" the Quinto file during and while in the employ of the FBI as an agent/informant. As to Count 9, also a Barber patient at one time and also involving allegedly false paperwork discovered by Christine Parker[11]--who testified that she removed those pages from the file—there was no other testimony that the file was otherwise not in order. A judgment of acquittal should be entered in favor of Mrs. McGill on those counts because the acts of a government agent cannot be used against her as the basis to convict.

### G. The Double Jeopardy Clause Bars Retrial

Since there was *no* evidence of critical elements of the offenses presented at trial, an acquittal on these counts is required and a retrial is precluded by the Double Jeopardy Clause of the Fifth Amendment, e.g. Burks v. United States, 437 U.S. 1, 14 (1978). Accordingly, the

---

[11] Ms. Parker testified that she was asked by "Luda" to make changes to the Greenberg chart regarding the patient's weight, which she refused to do and subsequently reported that to Mrs. McGill. Ms. Parker testified that Mrs. McGill seemed surprised and stated that they would never ask anyone to alter a chart. Mrs. McGill said she would speak to Luda. Ms Parker later found altered documents in the file bearing her name. Recall that Josephine Greenberg was a Rich Barber patient at one time and that Rich video taped himself with Luda altering files. .

14

judgment of conviction must be reversed and a judgment of acquittal be entered on all counts of conviction.

### III.     MOTION FOR NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33

Moving in the alternative, district courts are permitted under Rule 33 to order a new trial in the interest of justice.  This does not require a finding that the case ought to be reversed on appeal as a result of any error, nor a finding that the verdict was irrational. It is enough for the court to conclude that the result was unjust.  Pursuant to Rule 33 a court may grant a new trial upon the defendant's motion "if the interest of justice so requires." Fed. R. Crim. P. 33.  "'Whether to grant a Rule 33 motion lies within the district court's sound discretion.'" United States v. Ortiz, 182 F. Supp. 2d 443, 446 (E.D. Pa. 2000).  A court must grant a motion for new trial if it finds that there were cumulative errors during the trial that, "'when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'"  United States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994)  In evaluating a Rule 33 motion a court does not view the evidence favorably to the government, but rather exercises its own judgment in evaluating the government's case.  United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002).  The cumulative errors by the government so infected the jury's deliberations that they influenced the verdict and a new trial should be granted.

## IV.    CONCLUSION

For all the reasons set forth herein, this Court should enter judgments of acquittal for failure to prove elements of each offense.

                                Respectfully submitted,

                                **S/ Signature code: lbw227**
                                Lynanne B. Wescott
                                Court appointed counsel for defendant

Dated:  February 18, 2016

## **CERTIFICATE OF SERVICE**

I, Lynanne B. Wescott, hereby certify that a true and correct copy of the foregoing post trial motion was served upon the following counsel via electronic ECF filing and/or email attachment on the date set forth below:

>Frank A. Labor III, Esquire
>Marty Woelfle, Esquire
>Assistant U.S. Attorney
>615 Chestnut Street, Suite 1250
>Philadelphia, PA 19106
>Frank.Labor@usdoj.gov

_____s/_____
Lynanne B. Wescott

Dated:            , 2016